E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
RYAN WATERS (Cal. Bar No. 268015)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3111
    Facsimile: (213) 894-6269
    E-mail: ryan.waters@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-cv-07169 |
| Plaintiff, | VERIFIED COMPLAINT FOR FORFEITURE |
| v. | 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 |
| $1,296,912.00 IN BANK FUNDS IN CATHAY BANK ACCOUNT '0462, $157,109.50 IN BANK FUNDS IN BANK OF AMERICA ACCOUNT '0195, AND $60,656.47 IN BANK FUNDS IN FLAGSTAR BANK ACCOUNT '7452, | [U.S.S.S.] |
| Defendants. | |

Plaintiff United States of America brings this claim against defendants identified herein (collectively, the "defendant funds"), and alleges as follows:

**JURISDICTION AND VENUE**

1. The government brings this in rem civil forfeiture action

1

pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

**PERSONS AND ENTITIES**

4. The plaintiff in this action is the United States of America.

5. The defendant funds consist of the following:

   a. $1,296,912.00 in bank funds seized pursuant to a federal seizure warrant on January 10, 2024, from a Cathay Bank account with the last four digits ending in 0462 ("Cathay Bank Account '0462"), held in the name of Hepburn Trade Incorporated and seized at Cathay Bank, 4128 Temple City Blvd, Rosemead, CA 91770;

   b. $157,109.50 in bank funds seized pursuant to a federal seizure warrant on January 10, 2024, from a Bank of America account with the last four digits ending in 0195 ("Bank of America Account '0195"), held in the name of Sun Yang Trade LLC and seized at Bank of America, 888 W. 7th Street #100, Los Angeles, CA 90017; and

   c. $60,656.47 in bank funds seized pursuant to a federal seizure warrant on January 10, 2024, from a Flagstar Bank account with the last four digits ending in 7452 ("Flagstar Bank Account '7452"), held in the name of Octavia Trading Limited and seized at Flagstar Bank, 1400 Broadway, 16th Floor, New York, NY 10018.

6. The defendant funds are currently in the custody of the United States Secret Service ("USSS") in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Hepburn Trade Inc., Sun Yang Trade LLC,

Octavia Trading Limited, and the victims identified in Exhibit A may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

*Background on Confidence Frauds*

8. A "confidence fraud" involves a victim transferring money and/or property as a result of being deceived or misled by the offender. Often a fraudster deceives a victim into believing they have a close relationship--whether familial, friendly, or romantic--and leverages that relationship to persuade the victim to send money, provide personal and financial information, and/or purchase items of value.

9. Victims of confidence frauds often do not recognize that they are being defrauded for many months or more, and sometimes never recognize that they have been defrauded, because they are, or believe they are, in a legitimate relationship with the person making the false claims or promises to them. Therefore, it is not uncommon to observe multiple wires and transfers being sent to the same beneficiary or multiple beneficiaries over a period of time. Some victims of confidence frauds are not completely truthful with, or seek to impede, law enforcement officers who question them about the money they have transferred, in part to protect their purported friend.

10. Sometimes digital currency, also known as "crypto currency," "cryptocurrency" and "virtual currency," is used in confidence frauds. Digital currency is generally defined as an electronic-sourced unit of value that can be used as a substitute for fiat currency (*i.e.*, currency created and regulated by a government), but unlike fiat currency has no physical form and instead exists

entirely on the internet.  In addition, digital currency is generated and controlled through computer software operating on a decentralized peer-to-peer network.  Digital currency is often used for conducting illegal transactions or for concealing or disguising the true nature, source, location, ownership, or control of illegally obtained criminal proceeds. Bitcoin is one of the most commonly used digital currencies.

11.  A digital currency exchange (an "exchange") is a brick-and-mortar or online business that allows customers to trade digital currencies for fiat currencies or other digital currencies.  Most exchanges are located outside the United States in order to avoid regulation and legal requirements.  Coinbase, which operates in the United States, is one of the largest and most popular exchanges.

*The Law Enforcement Investigation in This Case*

12.  The USSS has investigated a confidence fraud whereby multiple victims transferred funds based on fraudulent pretenses directly into the accounts from which the defendant funds were seized.  As part of the investigation, the USSS learned the information set forth below.

*Victim E.W. is Defrauded*

13.  In September 2023, E.W. began to communicate with a female who went by the name Oksana Lupulyak ("Lupulyak") on the website LinkedIn. Lupulyak told E.W. she was born in China, now lives in Irvine, CA and is a partial owner of a beauty salon in Los Angeles, CA called Navilla Aesthetic Lounge.  Lupulyak also told E.W. she has an uncle named Zhang ("Zhang"), who trades crypto currency options. Lupulyak advised E.W. to invest on a crypto currency platform called Bakktig.com. E.W. would then call Zhang on the communication

4

application WhatsApp and Zhang would advise E.W. how to invest his funds.

14. Starting in September 2023 and ending in November 2023, E.W. made the following wire transfers: 1) $233,690.00 to an account in the name of Meiga Trading Limited, at Bank Limited, Hong Kong; 2) $1,000.00 to an account in the name of Chen-Haijian, at Standard Charter Bank, Hong Kong; 3) $65,000.00 to an account in the name of Chen-Haijian, at Standard Charter Bank, Hong Kong; 4) $750,000.00 to Cathay Bank Account '0462; and 5) $250,000.00 to Flagstar Bank Account '7452.

15. E.W. received the bank wire information via text message from a customer service representative on the Bakktig.com website. E.W. never inquired with a customer service representative of Bakktig.com why his funds were being sent to different bank accounts. In November 2023, E.W. checked his account balance on the Bakktig.com website and learned his account was purportedly now worth $1.2 million. E.W. attempted to withdraw funds from his Bakktig.com account and was told that his withdrawal needed to be approved by a financial committee of Bakktig and the approval can take up to 48 hours. E.W. attempted a second request for withdrawal of funds and was told he must deposit a "risk fund payment" of $252,472.00 or his funds balance would be turned over to a financial industry regulator. At this time E.W. began to suspect he was a victim of a scam and researched the website Bakktig.com. E.W. learned there is a legitimate crypto currency web site called Bakkt.com, and he confirmed with a representative of Bakkt.com that the Bakktig.com site is not part of their business.

16. In November 2023, a Cathay Bank investigator contacted the

authorized bank signer for Cathay Bank Account '0462 to inquire why E.W. sent a $750,000.00 wire transfer to the account. Cathay was provided a purchase contract allegedly describing what E.W. had purchased. The contract contained the following information: Contract date 11/26/23; items purchased: 300 bearings NTN, cost $106,875.00; 400 bearings NSK, cost $260,800.00; 300 hod rods crank shift kit, cost $204,000.00; and 250 tapered roller bearings, cost $178,325.00; for a total purchase contract amount of $750,000.00. The contract information is wholly inconsistent with the crypto currency investment that was represented to E.W.

*Victim G.S. is Defrauded*

17. During the summer of 2023, G.S. met a female, who went by the name Alisa, in a crypto currency chat room on the application WhatsApp. G.S. and Alisa developed a quick friendship and communicated on a weekly basis via text over the next several months. Alisa told G.S. she was from Idaho and worked in the software industry. Alisa encouraged G.S. to invest in crypto currency and told her to use the crypto trading platform called AdogeUK. G.S. decided to invest and would log onto the website of AdogeUK and obtain bank account and routing information of where to send her funds from a customer service representative.

18. From September 2023 to November 2023, G.S. made the following wire transfers: 1) $72,800.00, to an account number ending in 6834, at International Bank of Chicago; 2) $30,000.00 to Bank of America Account '0195; 3) $20,000.00, to an account number ending in 9177 at Bank of America; and 4) $50,000.00, to Cathay Bank Account

6

'0462.  G.S. has not yet tried to withdraw funds from her AdogeUK account and believes her account balance is composed of crypto currency and is secure in a "trust wallet."

19. The authorized signer for Cathay Bank Account '0462 provided Cathay a purchase contract allegedly detailing what G.S. had purchased. The contract contained the following: Invoice date 11/27/23; Items purchased: 500 fastener kit boards, cost $15,250.00; 200 gold plated sockets, cost $18,000.00; 200 ring pulleys, cost $9,000.00; 500 hand wheels, cost $7,750.00; for a total purchase contract amount of $50,000.00.  The contract information is wholly inconsistent with the crypto currency investment that was represented to G.S.

*Victim K.T. is Defrauded*

20. In August 2023, K.T. began to communicate on the website Meetup.com with a person who went by the name Nicole Broffer ("Broffer"). Broffer told K.T. she was from Germany, forty-two years old, and worked overseas in the medical manufacturing field. After a few weeks of communicating on Meetup.com, Broffer and K.T. communicated via text on WhatsApp. At first, K.T. considered his relationship to be only a friendship, but later felt the relationship was developing into a romantic relationship. Broffer told K.T. that in December 2023 she would be taking a work trip to the United States and that she would like to meet him. In September 2023, Broffer told K.T. she invested in crypto currency and encouraged K.T. to invest as well. Broffer told K.T. to use the crypto currency website trading platform called Timetrading-wallet.com.

21. From September 2023 to November 2023, K.T. made the following wire transfers: 1) $83,000.00 to an account in the name of

AC Holding Limited, N. 3229 Lyford Cay, Nassau, Bahamas, 82720, at Summit National Bank; 2) $63,000.00 wire transfer to an account in the name of Deltec Bank and Trust Limited, N 3229 Lyford Cay, Nassau, Bahamas, 82720, at United Texas Bank; 3) $50,000.00 wire transfer to Flagstar Bank Account '7452; and 4) $122,000.00 wire transfer to Cathay Bank Account '0462.

22. K.T. was provided bank account information via text message from a customer service representative on the Timetrading-wallet.com website. K.T. was also told that after receiving banking information he must wire transfer funds within four hours or contact customer service to obtain new banking account information. K.T. never asked why there was only a four-hour window or why his funds were being sent to different banks and account names. In early November 2023, K.T. checked his account on the Timetrading-wallet.com website and learned his balance was purportedly now worth $809,499.00. K.T. attempted to have some of his account balance transferred to his bank account but was told that he must first pay $122,000.00 to cover capital gain taxes and a service fee for tax preparation. K.T. agreed and sent a $122,000.00 wire transfer to Cathay Bank Account '0462. A few days after sending the wire transfer, K.T. attempted to withdraw funds but was told he must pay a $200,000.00 security deposit. K.T. did not pay the $200,000.00 and a few days later attempted to log into Timetrading-wallet.com but was no longer able to access the website.

*Tracing Fraud Proceeds into Cathay Bank Account '0462, Flagstar Bank Account '7452, and Bank of America Account '0195*

23. The following fraudulent proceeds, described above, were deposited into Cathay Bank Account '0462, Flagstar Bank Account '7452, and Bank of America Account '0195:

    a. On November 27, 2023, a $750,000.00 wire to Cathay Bank Account '0462; and on November 21, 2023, a $250,000 wire to Flagstar '7452, both from victim E.W. (<u>see</u> paragraph 14 above);

    b. On November 27, 2023, a $50,000.00 wire to Cathay Bank Account '0462; and October 27, 2023, a $30,000 wire to Bank of America Account '0195, both from victim G.S. (<u>see</u> paragraph 18 above); and

    c. On November 28, 2023, a $122,000.00 wire to Cathay Bank Account '0462; and on November 09, 2023, a $50,000 wire transfer to Flagstar Bank Account '7452, both from victim K.T. (<u>see</u> paragraph 21 above).

24. In addition, the USSS has identified additional suspicious deposits into the three seized accounts but has been unsuccessful in contacting and interviewing the individuals associated with the deposits/transfers and are believed to be victims of this scheme. These other presumed victims made approximately $8,366,842.84 in suspicious deposits into the three accounts (the "Additional Deposits"). Of the $8,366,842.84 in Additional Deposits, approximately $374,972.00 was deposited into Cathay Bank Account '0462, approximately $4,575,292.00 was deposited into Flagstar Bank

9

Account '7452, and approximately $3,416,578.84 was deposited into Bank of America Account '0195.

25. The Additional Deposits share similarities with the above-described fraud victim transfers into the three seized accounts, in that they (1) were made in the same time period as the above-described transfers of fraud proceeds; (2) were made from individuals in locations throughout the United States without the kind of geographic patterns that might be expected from a legitimate business; (3) were made from people who had not previously deposited funds in the accounts; and (4) were almost entirely made in large round-dollar amounts, which are inconsistent with normal business transfers (which typically reflect taxes and other costs). Accordingly, the Additional Deposits are also fraud proceeds from victims of this scheme.

26. The government seized $1,296,912.00 from Cathay Bank Account '0462. The specified transfers from victims E.W., G.S., and K.T. described above (which total $922,000.00) combined with the Additional Deposits (which total $374,972.00) represent a total of $1,296,972.00 of fraud proceeds traced into Cathay Bank Account '0462, which exceeds the amount the government seized.

27. The government seized $60,656.47 from Flagstar Bank Account '7452. The specified transfers from victims E.W. and K.T. described above (which total $300,000.00) combined with the Additional Deposits (which total $4,575,292.00) represent a total of $4,875,292.00 of

fraud proceeds traced into Flagstar Bank Account '7452, which exceeds the amount the government seized.

28. The government seized $157,109.50 from Bank of America Account '0195. The specified transfer from victim G.S. described above (which totals $30,000.00) combined with the Additional Deposits (which total $3,416,578.84) represent a total of $3,446,578.84 of fraud proceeds traced into Bank of America Account '0195, which exceeds the amount the government seized.

### FIRST CLAIM FOR RELIEF

29. Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

### SECOND CLAIM FOR RELIEF

30. Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud). The defendant funds are therefore

1  subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  In
2  addition, to the extent that the defendant funds are not the actual
3  monies directly traceable to the illegal activity identified herein,
4  plaintiff alleges that the defendant funds are identical property
5  found in the same account or place as the property involved in the
6  specified offense, rendering the defendant funds subject to
7  forfeiture pursuant to 18 U.S.C. § 984.

### THIRD CLAIM FOR RELIEF

31.  Based on the facts set out above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. § 1343 (wire fraud).  The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  In addition, to the extent that the defendant funds are not the actual monies directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays that:

(a)  due process issue to enforce the forfeiture of the defendant funds;

(b)  due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c)  this Court decree forfeiture of the defendant funds to the United States of America for disposition according to law; and

(d)   for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: August 23, 2024

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

        /s/ Ryan Waters
RYAN WATERS
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

VERIFICATION

I, Fred Apodaca, hereby declare that:

1. I am a Special Agent with the United States Secret Service.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 18, 2024 in Los Angeles, California.

*Fred Apodaca* (signature)
FRED APODACA
Special Agent